Good morning. May it please the Court. My name is Anthony Yang from the Department of Justice. I'm appearing on behalf of the individual FBI agents in this appeal. I apologize for my voice, but I'll try to speak loud enough for you to hear me. This case concerns the arrest and two-hour detention of Fania Gehrman following a nighttime high-risk traffic stop in the winter of 2001. The issue on which Ms. Gehrman rests her Bivens case and the issue upon which the District Court granted summary judgment, or denied summary judgment, is whether the subjective beliefs of arresting agents concerning Ms. Gehrman's identity are legally relevant to whether the arrest was a reasonable seizure under the Fourth Amendment. The Supreme Court has made unmistakably clear that the Fourth Amendment's reasonableness inquiry is purely objective, and it's an objective inquiry in which subjective concepts can play no role. Even accepting as we must in this interlocutory appeal that the agents were subjectively uncertain as to whether Ms. Gehrman was Revka Adamatoff, Ms. Gehrman's arrest did not violate the Fourth Amendment. In fact, the case law of this Court and of the Supreme Court involving much more egregious facts show that the officer's subjective beliefs are irrelevant to the Fourth Amendment's reasonableness inquiry. If, for instance, an officer arrests a suspect without believing that probable cause exists, in other words, believing that the arrest, in fact, is unconstitutional because the officer believes that he or she does not have probable cause to make that arrest, that arrest is still lawful under the Fourth Amendment so long as probable cause will exist as an objective matter. So it was held by this Court in Moses and as indicated by a plurality of the Supreme Court in Florida v. Royer. Similarly, if an officer arrests for a crime for which there is no probable cause to arrest but probable cause did exist for a different crime that the officer did not rely upon, it's a lawful arrest under the Fourth Amendment. Such was held by the Supreme Court recently in the Devenpeck case, which we cited to the Court in a 28-J letter. If two officers come to different conclusions about the existence of probable cause and an arrest is made, probable cause will still exist. Aren't some of those cases different in the sense that it is not the officer's – the legal system does not assign to the officer the primary responsibility for deciding that stack of evidence constitutes probable cause. That's a magistrate judge or district judge or ultimately appellate judge determination. The question here is somewhat different, and that is, did these people actually mistake the – for sake of keeping the party straight, I'll say the grandmother for the mother. And it wasn't so unimportant to your clients that they didn't – I mean, they did submit affidavits that said in broad terms, we thought she was the other person. So they were trying to speak to the Court to that issue, and so the Court says, well, this apparently is a factual issue that matters and there's sufficient evidence in dispute for me to conclude this is a genuine issue. Well, I think the fact that we submitted evidence concerning the subjective beliefs does not undermine our legal argument, Your Honor. Let me go back to the legal argument. Isn't this a somewhat different judgment? It's not a legal evaluation. Did these officers have that in mind or not? Well, actually, Your Honor, no, that's not the inquiry here. The inquiry ultimately is whether it was an unreasonable seizure under the Fourth Amendment, and then that turns into a question of whether or not there was probable cause for the arrest. Well, so you're conceding or agreeing that there was an arrest in this case? For purposes of this case, yes, Your Honor. We did take Ms. Gehrman back to the FBI's field office, and the length of her detention was roughly two hours. So we're accepting for purposes of this case that there was an arrest and that probable cause would be required to support that arrest. But going back to Judge Clifton's question as to what the nature of the inquiry is here, the inquiry ultimately is always whether the arrest was an unreasonable seizure under the Fourth Amendment. And in determining the reasonableness of an arrest, the Supreme Court has made clear in a series, a long series of cases, culminating most recently in the Devenpeck decision regarding an arrest on the wrong charge, essentially, by an officer, that the inquiry that the Fourth Amendment demands under the reasonableness standard is purely objective. There is no room for subjective beliefs of the officers to play. What's relevant with respect to the officers are the facts and circumstances confronting the officers at the time of the arrest. Let me try a hypothetical. Suppose the officers arrest somebody for which they have no awareness of probable cause or anything. They just don't like the looks of this guy, and they pick him up. And lo and behold, it turns out they discover a few days later that someplace in another jurisdiction there's a warrant outstanding, an arrest warrant outstanding for the person. Can that arrest be justified by facts they had no knowledge of? Of course not, Your Honor. The historical facts that you have to assess probable cause under are the facts known to the officers, or those with whom the officers were working at the time. So there's at least an understanding that the officers' awareness is part of the picture. Well, whether it's aware of the facts known to them. The circumstances that the officers confront is the way the Supreme Court has articulated the question. Those are relevant. Those are the factual matters upon which a judicial officer has to determine whether or not ultimately probable cause exists as an objective matter. Now, although courts must make the final determination, officers in the field have to make this call as a practical matter, as an everyday occurrence. If they don't have a warrant, they make that determination based on their knowledge at the time. So your case first, then, is that under these kinds of cases, first, that there was probable cause, right? That's correct. That's your first line of defense. Second, I assume you're saying even if there wasn't, it was still reasonable, right? Right, in terms of the qualified immunity. Yeah. Now, but so this will help me. Tell me briefly what factors make it a reasonable judgment to conclude that probable cause was present. Okay, Your Honor. That itself involves a two-step inquiry. The first question is whether there was probable cause to arrest Rebecca Adamatoff, the mother, if you want to shorten it. When you say mother, you mean as opposed to the grandmother. Exactly. The mother of the head of this organized crime syndicate. And that's not disputed for purposes of this appeal. The second question was whether it would be objectively reasonable to mistake, for a reasonable officer, to mistake the grandmother, Ms. Gehrman, for the mother here. And I believe that's where your question is going towards. First, kind of the background circumstances, which are relevant, involve the exigency of the situation here. Circumstances that the FBI agents were aware of indicated that the Adamatoff organization was responsible for the disappearance of a cooperating witness, Misko Jovanovich. In that context, they sent out agents to locations where they anticipated they would find perhaps Misko Jovanovich, and the case agents worked on the affidavits at the office. During the course of working on those affidavits for purposes of the warrant, an SUV, which was known to belong to Ilya Adamatoff, had his plates, they knew the SUV, was found leaving Revka Adamatoff's house. They stopped that SUV in a high-risk stop. In the car with Adamatoff, who was armed with a revolver, I believe, as well as a key member of the Adamatoff organization who was driving the vehicle, was an older woman in the backseat. She shared key characteristics with the suspect, Revka Adamatoff. She was older, Russian, spoke with a Russian accent, and the agents involved were not aware of any such older woman implicated to Ilya Adamatoff. She could not give her address. This was, again, a nighttime stop in which the officers believed that the and had information to lead a reasonable officer to believe that the occupants were dangerous. The totality of those circumstances, Your Honor, I believe, presents a case where a reasonable officer can conclude that the third occupant, coming from Revka Adamatoff's house, sharing key characteristics with Revka Adamatoff, found in the company of not only Ilya Adamatoff, the head of this organized crime syndicate, but also one of the key members who's driving the vehicle. All of those factors, when you take the totality of the circumstances, would give probable cause to arrest Ms. Gehrman under the ultimately mistaken belief, but under the reasonable belief, conclusion that she was Revka Adamatoff. I think if going back to the objective, we bounce from the objective inquiry to the subjective inquiry and vice versa. I'd like to go back to the question of whether it's a purely objective Fourth Amendment inquiry. I think Justice Ginsburg's concurrence in Arkansas v. Sullivan, which she wrote for Justice Stevens as well as Breyer and O'Connor, she explained that under the court's case law, official discretion is unlimited under the Fourth Amendment. There are no limits on official discretion so long as probable cause exists as an objective matter. Circumstances are out there that would warrant a reasonable officer to arrest an individual. It doesn't matter if the arrest is pretextual. It doesn't matter if the officer believes there's probable cause to arrest. Nothing in the officer's subjective conclusions, beliefs, intent, motivation, whatever you want to call it, is relevant. Justice Ginsburg explained that in the Arkansas v. Sullivan. The courts also explained that the objective reasons that the court hypothecates for the arrest need not be the actual reasons relied upon or held or believed by the officers. That's been a common theme in the court's most recent Fourth Amendment jurisprudence. There are simply no exceptions to this rule when an arrest is based on probable cause, which is determined by an objective matter. So long as the facts confronting the officers at the time would have warranted a reasonable officer, a reasonable and trained officer, making the same conclusion, that's all that's required. Going to the second point, which is even if this court were to conclude that the arrest of Fania Gehrman during the nighttime stop in 2001 was not supported by probable cause, the officers would nevertheless be entitled to qualified immunity. The Supreme Court recently clarified in its decision in Brasseau that that clearly established law required to overcome qualified immunity can take two forms. The first, which the court could address when it finds an obvious violation of the Constitution, is that there doesn't have to be a materially similar case. You don't have to have cases on all fours that can't be distinguished so long as the violation is obvious. That is reflected in the court's decision in Hope v. Pelser. The facts of that case showed the violation to be a clear violation of the Eighth Amendment. Officers took Hope, handcuffed him to a hitching post above his head, held him in the summer Alabama sun without a shirt for eight hours while taunting him about his thirst. You don't need a case on all fours to determine that that is a violation of the Eighth Amendment. And the Supreme Court explained and clarified in Brasseau that with respect to obvious cases, you don't need materially factually similar cases to overcome qualified immunity. However, if you don't have such an obvious violation, which we don't believe is possible in this case, you consider the Fourth Amendment's jurisprudence of this court and the Supreme Court, which have made painstakingly clear that subjective intent, motivations, and beliefs are irrelevant for purposes of the Fourth Amendment. So if you don't have a clear violation, then you need to go to the more particularized inquiry that is articulated in Saussie v. Katz. There you must find a case with materially similar facts in order to give officers fair warning as to the unconstitutional nature of their conduct. Again, the plaintiffs have cited none. We have located no case even closely similar to the facts on this case, Your Honor. And for both reasons, first, that this is not an obvious violation of the Fourth Amendment. In fact, as we explained in our briefing we've discussed today, it's not a violation of the Fourth Amendment at all. They would be entitled to qualified immunity. And secondly, even if it was a violation of the Fourth Amendment, as this court might determine after this argument, they would be entitled to qualified immunity because there are no materially factually similar cases that would give fair warning that the conduct that the officers took in their decision to arrest Mr. Cameron in the winter of 2001 was an unconstitutional action. If the court has no further questions, I'll reserve the time for them. One, is it except for the moment that there is at least some evidence, or as the district court concluded, a genuine issue of fact, on whether the officers did in fact believe the woman was the mother? And except for a moment, the proposition that you've offered on legal grounds that their subjective belief is not what we look to. Could it be argued that the fact that the officers, or at least there's some uncertainty as to whether the officers had that belief, speaks to the question as to whether the misidentification was objectively reasonable? No, Your Honor. I mean, that essentially would be abdicating the court's role to determine the objective reasonableness to conclusions drawn from officers in the field. Ornelas is perhaps a good case to illustrate this. The Supreme Court explained in Ornelas that when you're undertaking a Fourth Amendment type inquiry, you look to the historical facts and circumstances confronting the officers. And a court has to review those determinations for purposes of clear error when there is a factual determination. But when you're talking about the legal conclusion as to the existence of probable cause, that's reviewed de novo. There's no deference given to a district court's conclusion on appeal. Similarly, there's no deference given to an officer's judgment and appeal as to whether there's probable cause or not. Sometimes that cuts in favor of the officers. Sometimes it cuts against. But either way, the court's determination of probable cause is an objective one, which does not defer to the officer's determination. Well, on this objective measurement of probable cause, would there be probable cause to arrest everybody in the car under the circumstances described here? I don't believe. Instead of a 94-year-old woman who was lucky enough to look not a day over 70, instead of that, if it had been a 10-year-old woman. No, Your Honor. I believe guilt by association, although there might be some circumstances where if an occupant of the court has to know, for instance, of the criminal activity in the car, that might warrant an arrest based on association. She really had bad luck to be in the wrong place. Well, I don't know if she did have some bad luck, but it's more than bad luck. There were circumstances beyond that which would give rise to the reasonable conclusion that she was Revka Damidoff. And I would note, Your Honor, that this error, although it was reasonable, it was fairly promptly corrected by the FBI. She was held a total of less than two hours. She was not, as a result of it being caught early in the process, she was released. This, of course, doesn't speak to you. If you're writing the opinion in this case, how would you describe the elements that went into an objectively reasonable, probable cause to arrest this particular individual? Well, Your Honor, I think that... You can't arrest her just because she's in the car. No, no. Okay. And you can't arrest her, well, if you can't arrest her just for being there with these other, let's just say, known criminals, known perps. Right. There's more than just her being there. First of all, it did come from her house. The suspect was known to have associated with these individuals and that she was engaged in the same criminal activity. Speaking now of the mother. Of the mother, right. And then this woman not only was found in the car coming from the mother's house, but she shares key characteristics with the mother. She was not able to provide, for instance, an address or anything other than perhaps saying her name, which she alleges. In those circumstances, the fact that she bears a resemblance, has certain key characteristics with the suspect, and is coming from the suspect's house in the company of individuals with whom the suspect is known to be engaged in a criminal enterprise with, I think that's sufficient for purposes of determining whether it was objectively reasonable. Now, ultimately, again, through the normal course of events, if that is wrong, objectively reasonable conclusions are sometimes wrong. It's caught, and it's caught rather quickly, either when she gets to the FBI field office or if she was presented to a magistrate. It's easy on those facts, easy for me to conclude that it's objectively reasonable, you know, to make a Terry type stop and to make some kind of inquiry as to whether or not she should be arrested. But here, you know, they went beyond, you know, a reasonable suspicion stop. They went to a full arrest, which requires probable cause, which is beyond reasonable suspicion. I agree that the circumstances you describe at least raise reasonable suspicion. It's at least a much closer question on whether they amount to probable cause. Well, Your Honor, I would note that even the plaintiffs don't take issue with the totality of circumstances. The only things that the plaintiffs suggest, and it's very brief, it's barely much of an articulated argument at all with respect to the objective reasonableness of this case, is I believe it's on page 21 of their brief where they say, one, Ilya Damidoff yelled out that his mother, grandmother was in the car, you know, 94-year-old grandmother. Two, she said her name was Fania Gehrman. And three, there were medicine bottle, there was a medicine bottle in the vehicle which was prescribed to Fania Gehrman. We've addressed these points in our brief to explain why those facts do not overcome the totality of circumstances, which even the plaintiffs, the plaintiffs have never really challenged this. Their case has been geared to the subjective beliefs of the agents at the time of the arrest. That's what this case is all about, Your Honor. And as to the objective nature, we believe that the record more than adequately supports the actions here, which unfortunately did result in a detention of two hours. Thank you, Your Honor. Your Honor, please. May it please the Court, Per Olson representing the plaintiff. What happened in this case is the individually named defendants filed a motion for summary judgment where they put their subjective knowledge at issue. They said, we arrested her because we believed she was Rebecca Damidoff. We countered that with a number of statements made by several of these agents, contemporaneous, more contemporaneous with the actual incident, in which they gave no indication that there was any mistake about who this woman was. Agent Stewart completed an FBI report. Agent Wozowicz, I believe her name is pronounced, and Heckendorn completed a 302 report. Agent Allevy testified in two criminal matters involving Ilya Damidoff. None of them ever said, we believe this woman was Rebecca Damidoff. In fact, quite to the contrary, their 302 reports make quite clear that there was no confusion about who this woman was. And so the problem the government has now and has had since then is trying to come up with some legal theory as to why this arrest was valid, accepting the fact that she was, in fact, arrested. And what they've come up with then is, despite all these cases, to say that subjective intent of the officer is not relevant as long as there's objective probable cause. But here, there wasn't probable cause, unless they actually did believe that this woman was Rebecca Damidoff and that belief was reasonable. But without that belief, they have- It seems to me you're mixing two things, because the second half of your sentence is, if they actually believed. And is the test whether they actually believed, or is the test whether people with their knowledge objectively could have believed or reasonably believed? The test in this circumstance, where the government is relying upon a case of mistaken identity, is they have to actually believe it.  The other example here is one that actually the government cites, which is Lee v. Gregory, which is a Ninth Circuit case decided just last year. It was decided after I filed my brief, but I didn't notice it, frankly. It was decided about a month after I filed my brief. And that was a case of mistaken identity, sort of, although I would have to concede that the facts in that case were a little more audacious than this one. The agent in that case wanted to interview the person who ended up being the plaintiff about the plaintiff's brother, who had a warrant out for his arrest. The plaintiff was being difficult, didn't want to talk to the agent. And so what the agent did was, there was a warrant for the brother in Florida on another charge. He got a copy of that warrant, which was perfectly valid, nothing wrong with the warrant itself, and used that warrant and had local law enforcement officials go and arrest the plaintiff, saying this was the person that is the subject of this warrant. And he then used that as leverage to get this guy to talk to him. And when he was later sued... At the point of that case, there was actual knowledge of a non-mistaken identity. And I don't think you have that here. I mean, you don't have affirmative statements saying, we knew for sure who she was. I suspect you have... What evidence is there objectively that she was not who the government now says they objectively reasonably believe? I'll go back to mother and grandmother. What's the evidence that was the objective evidence? What facts were known to them to demonstrate that this was grandmother, not mother? She said she was finding gearment. She showed him a prescription bottle with her name on it. The son yelled out her name. The 302 reports that I referred to, as well as Agent Nalibi's testimony, gave no indication that they believed that she was Rebecca Adamidoff. And so this whole thing about, well, they're both elderly and they both speak Russian, this is sort of an after-the-fact construct. No one at the scene actually believed that she was Rebecca Adamidoff. And the hypothetical that I asserted in my brief, I think the hypothetical still pertains here. If I'm a law enforcement agent and I see a man on the street and I know that he fits the exact descriptions, all the facts and circumstances confronting me tell me that that person fits the exact description of somebody that I know as a worn-out for their arrest. But I also subjectively believe that that's not the person for whatever reason. I know that that's not actually the person. Two different things. I know and I subjectively believe. Why do I know that's not the person? What's the fact? Because what Lee versus Gregory is talking about is affirmative evidence or affirmative reason to believe that you couldn't objectively conclude the mistaken identity was made because the officer had reason to know that it was X instead of Y. What's the X instead of Y here? Now, you've listed some factors, but is that all we have to work with? Well, Your Honor, I don't think that I need to prove that they actually – well, okay, let me back off a little bit. I don't think I need to prove that they actually knew that she was Fania Gehrman. What I do need to establish, I think, is that they had no reason to believe that she was Rebecca Adamidoff because if she's not Rebecca Adamidoff, they have no grounds to arrest her. And if they don't believe that she's Rebecca Adamidoff, they have no grounds to arrest her, period. And the fact that you would construct after the fact some facts that may have led – and we don't concede this – but may have led some officer to conclude that she might have been Rebecca Adamidoff doesn't fit the bill, doesn't establish qualified immunity here. And that's the problem that the government has. And when we get to the issue of qualified immunity then, this issue about whether there was clearly established law, well, the clearly established law is that you can't arrest somebody without probable cause. And I don't believe we need to cite case after case to prove that point. Well, it's clear – it's clear there was probable cause. I mean, the question is, you know, is really the mistaken identity issue, right? Right. It's not whether or not it's probable cause. The question is, one, whether or not the mistaken identity issue is governed by the same kind of objective analysis that the probable cause determination itself is determined by. And two, you know, were there those sufficient indicia of identity that make it objective, objectively reasonable for these officers to have concluded that Garamond was whoever the other person was. Now, you know, it's hard to it's hard to conclude why. If you think about it, why if the defense didn't believe that she was the mother, I mean, why would they arrest her? What would be the reason and purpose for the arrest? Well, Agent Wozowicz stated in her 302 that Fania Garamond was transported down to the FBI office so that she could be interviewed. Right. So they detained her so that they can interview her. And the interview never happened, apparently. But that was at least what she's stating in this 302 report as for the purpose for the detention. So that's at least one explanation. Now, in this case, I think what distinguishes this case from the other cases that the government has cited is, you know, there's a difference between subjective intent where probable cause independently exists and this situation where a probable cause to arrest a particular individual or excuse me, where a case of mistaken identity so inherently depends upon the agents actually being mistaken about that person's identity. And that's why, you know, I agree that the Levy-Gregory is not exactly fully on point, but it demonstrates the point that there can be and there are cases where subjective knowledge, not so much intent about whether you want to know what the purpose of the arrest is, but subjective knowledge about the facts justifying the arrest and establishing probable cause, sometimes those facts are relevant. And mistaken identity is one of those situations where an officer's actual knowledge about the circumstances is relevant to whether the arrest is justified. So you're not really quarreling with the argument with regard to what the test is, that is, that it is an objective test. You are arguing that the government can't pass the objective test here, that officers could not reasonably have concluded that this was the person for whom they had probable cause. That's a different test than that that appeared to be applied by the district court. And granted, we've had lots more opportunity to chop it up, but as I read the district court's adjudication, what it said specifically, it's a material question of fact is whether defendants in fact believe Gehrman was Rebecca and therefore had probable cause or whether defendants are merely uncertain. That seems to be phrased much more in terms of the actual understanding at the moment of the officer, what we call the subjective standard. Is it your view, then, that the district court may have applied the wrong standard? No. No, absolutely not. And I don't actually recall whether the district court really got into the issue of whether it might have been reasonable for the officers to conclude that Rebecca Adamadoff, excuse me, that Fannie Gehrman was Rebecca Adamadoff. What I read from the magistrate judge, I should be clear on that, because that happens to be what was open in front of me. That language at least would suggest that the decision turned on a subjective rather than objective standard. So let me put the question to you differently. Without asking you to evaluate what the district court did, are you now telling us that, yes, it is an objective standard, that your difference is that you don't think the facts here support a summary judgment in favor of the proposition that, objectively, it was reasonable to conclude that the grandmother was the mother? Yes. Well, I think there's always an objective test. The question is, when is there also a subjective test? And I think this is one of the situations where there is also a subjective, where the officer's subjective beliefs about the state of affairs, particularly about this person's identity, is relevant to the overall question of whether this arrest was appropriate. Now let me pose what I think is the hard question in that case. When we have decisions, there are many decisions, that a nefarious motivation on the part of an officer, not just wasn't really sure, didn't really know, which is the alternative the magistrate judge seems to postulate, because nobody really identifies an ill intent on the part of the officers here. But you've got cases where an ill intent on the part of the officer doesn't serve to vitiate the protection of the objective test. The court looks and says, well, the facts would have reasonably justified it, so even though the fact the officer didn't care about that in the wit and just had it out to get this guy, that doesn't undercut the objective test. Well, why here? Well, of course, in those cases, there was actually probable cause to arrest the person. The officer may not have arrested that person for that reason, or they may have harbored some other ill intent to arrest the person for some other ulterior purpose. But at least we can say that there was probable cause to arrest the person, whether there was a warrant out for the arrest. I see that pointing back to the objective standard. What I'm trying to find out is at what point is the actual belief of the officer pertinent to the question? Well, and I can't speak to the whole broader range of situations, but it's relevant here where it's a case of mistaken identity, or at least a claimed case of mistaken identity. And if you look at the California Hill case, which really goes into this, they talk about whether the officer, his belief was reasonable, and they assume that he actually had the belief. And it's just a factual predicate for these types of cases where the officer is relying upon mistaken identity. And I think the Levy-Goodwin case does bear that out. That is just a logical, inherent predicate to these cases where officers are relying upon mistaken identity. So I really have nothing else unless the court has further questions. Thank you for your argument. We'll give you a minute for rebuttal, if you have anything quick to say. Your Honor, I think the, as was indicated with your colloquy with the opposing counsel, the focus of this case really is on whether or not subjective beliefs are relevant and pose a singular exception to the jurisprudence in the Fourth Amendment, which states that subjective beliefs, conclusions are not relevant. And I would point the court back to Moses as well as Florida versus Royer, which explained that even when the officers don't believe probable cause exists, they don't believe they have grounds to make an arrest. But they do. That is. Well, you think it's different on the mistaken identity issue. In other words, I can see making the test a little bit different. And for a mistaken identity case, to rely on that, one, you have to have the subjective belief in the mistaken identity, and two, that has to be objectively reasonable. What's wrong with that test? Your Honor, I don't believe it's different. Ultimately, this comes around, it's still a question of probable cause inquiry. No, I mean, we'll assume that there's probable cause to arrest Adanoff or whoever it is, right? The way that the Supreme Court articulated in Hill versus California was that there was probable cause to arrest Miller in that case, even though he was arrested for believing that he was Hill, which was the person for whom the agents had probable cause to arrest. So when there's a reasonable mistake, it's still a question of probable cause, Your Honor. It all comes back to probable cause. And the Supreme Court has made clear on numerous occasions that when we're talking about probable cause under the Fourth Amendment, you look at the totality of the circumstances and you judge it under a purely objective test. The Court has said that it's only found ever recognized two possible exceptions, and those exceptions fall outside of contexts that involve probable cause. It is the administrative search context or the inventory search context. In both of those cases, the search is conducted without probable cause. You don't look at the facts and circumstances, and in those, the totality of the facts and circumstances. In those contexts, you might sometimes look, possibly, because I'm not sure the Court has held that, but they at least recognize that there might be an exception in those contexts. But when you're dealing with the totality of the circumstances and probable cause, including mistaken identity, it's an objective test. Thank you. We thank both counsels for the argument. The case just argued is submitted. And we move to the last case on today's calendar, Harrington v. American Economy Insurance. Thank you.
judges: Goodwin, Tashima, Clifton